IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Respondent, | : | |
| | : | **Criminal Action No. 05-83-SLR** |
| v. | : | **Civil Action No. 06-759-SLR** |
| | : | |
| DAVID DONALDSON, | : | |
| | : | |
| Defendant/Petitioner. | : | |

### GOVERNMENT'S SUPPLEMENTAL RESPONSE
### TO PETITIONER'S 28 U.S.C. § 2255 MOTION

NOW COMES the United States, by and through its undersigned attorneys, and hereby files its supplemental response to the defendant/petitioner David Donaldson's (hereinafter "Donaldson" or "defendant") Section 2255 motion. For the reasons set forth below, the motion is without merit and should be denied without an evidentiary hearing.

Donaldson is not entitled to a new sentencing hearing. The assistance rendered by his defense attorney, Anthony A. Figliola, Jr., Esq. ("Figliola"), during defendant's February 22, 2006 sentencing hearing was not constitutionally defective. Donaldson cannot demonstrate that Figliola's representation fell below an objective standard of reasonableness nor that any deficiencies in his performance prejudiced the defendant. As such, Donaldson's claims fail to meet the requirements of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). They may be dismissed by this Court without a hearing.

### I. Timeliness

The defendant's Section 2255 motion is timely, as it was filed on December 8, 2006, which is within one year of the judgment in the criminal case, entered on March 15, 2006. *See* Judgment, Docket Item (hereinafter "D.I.") 16.

### II. Factual and Procedural Background

On September 6, 2005, Donaldson was charged by the grand jury for the District of Delaware in a four count Indictment with access device fraud and conspiracy to commit access

device fraud. D.I. 2. Donaldson retained Figliola to represent him from the outset of the case. *See* Minute Entry for September 22, 2006 Initial Appearance.

Donaldson appeared before the Court for a Rule 11 hearing on November 22, 2005 and pled guilty to Counts One through Four of the Indictment, pursuant to a Memorandum of Plea Agreement. D.I. 13.

Donaldson's sentencing hearing was held on February 22, 2006. Donaldson's adjusted offense level as calculated in the Presentence Report ("PSR") was a Level 15; his criminal history category was a III.[1] Ex 3, PSR at ¶¶22-32 and ¶¶ 33-75.[2] Donaldson was sentenced by the Court to thirty (30) months imprisonment, the top-end of the applicable guideline range, as well as three years supervised release and restitution on each of Counts One through Four, all counts to be served consecutively. D.I. 16. Final judgment was entered on March 15, 2006. D.I. 16.

On May 12, 2006, Donaldson filed a notice of appeal with the Third Circuit. D.I. 18. The government's letter response indicated that the defendant's appeal was untimely. On October 27, 2006, Donaldson moved for a voluntary dismissal of his appeal, pursuant to Rule 42(b) of the Rules of Appellate Procedure. That motion was granted, and Donaldson's appeal was dismissed on November 7, 2006. D.I. 30.

Thereafter, on December 8, 2006, Donaldson filed a Motion Under 28 U.S.C. Section 2255 To Vacate, Set Aside, or Correct His Sentence, alleging that his counsel's performance at sentencing was constitutionally deficient. *See* D.I. 31 & 32.

The government filed its initial response/motion on March 12, 2007. D.I. 36. By Order dated May 4, 2007, the Court required the government to file an affidavit of defense counsel

---

[1] While Donaldson's criminal history score was seven, only four of those criminal history points were counted toward his criminal history computation pursuant to U.S.S.G. § 4A1.1(c).

[2] In light of the fact that PSRs are not to be filed on the docket, Exhibit 3 will be provided in hard copy to counsel and the Court. It will be redacted in its entirety from the electronically filed version of the Government's Supplemental Response.

Figliola and any supporting documentation by June 29, 2007, in response to defendant's motion. D.I. 37.[3]    That affidavit (hereinafter the "Figliola Affidavit") is attached hereto as Exhibit 1.

## III. Issues Raised

Pursuant to 28 U.S.C. § 2255, Donaldson may seek relief on the ground that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, . . ." 28 U.S.C. § 2255.

Here, the defendant seeks a new sentencing hearing by alleging that Figliola's performance at his February 22, 2006 sentencing was constitutionally deficient on two grounds. First, he claims that Figliola "failed to present available evidence in mitigation of sentence to support an argument that [Mr. Donaldson] should receive a lesser sentence in consideration of the factors set forth in 18 U.S.C. Section 3553(a)." D.I. 32 at 5 (reverse side). In particular, Donaldson maintains that his counsel was ineffective at sentencing because he did not present (a) evidence of "the substantial disparity [in Donaldson's sentence] from the probationary sentence that the court imposed upon Petitioner's codefendant Gary Arters," (b) evidence of the appropriateness of a variance from the otherwise applicable U.S. Sentencing Guideline range "based upon [Donaldson's] early acceptance of responsibility, such as his statement to the authorities admitting his involvement [in the charged crime]; and/or (c) testimony at the sentencing hearing from Melissa Heck and Robert Fontanez. *Id.*

---

[3] In his § 2255 motion, the defendant included affidavits of two individuals, Melissa Heck and Robert Fontanez, who claim to have been present at defendant's sentencing hearing but who were not asked to testify on his behalf. D.I. 32, Affidavits of Melissa Heck and Robert Fontanez. The original record was devoid, however, of facts regarding whether there was discussion between defense counsel and the defendant about Heck or Fontanez testifying at the sentencing hearing. Moreover, the record was silent about actions of or discussions between defense counsel and the defendant regarding presenting information at the sentencing hearing concerning the Section 3553(a) factors mentioned in defendant's motion. Pursuant to the government's request, this Court issued its May 4, 2007 Order requiring Figliola to turn over his files to the government. D.I. 37. The Court also ordered the government to supplement the record with an affidavit from Figliola included as part of this Supplemental Response. *See* Ex. 1.

Second, while acknowledging that the Court was made aware of the issue by government counsel, Donaldson maintains that Figliola "should have objected to the court's failure to comply with the requisite sentencing methodology as set forth in *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Cooper*, 437 F.3d 324 (3d Cir. 2005)[sic]." D.I. 32 at 5 (reverse side). As a result, the defendant requests the Court grant his Section 2255 motion and resentence him with all Section 3553(a) factors appropriately considered. *Id.*

## IV. Defendant Cannot Meet His Burden To Demonstrate That Counsel's Performance At The February 22, 2006 Sentencing Hearing Was Ineffective Under *Strickland v. Washington*

### A. Legal Standard

A party claiming ineffective assistance of counsel bears the burden to demonstrate: (1) that his attorney's performance was deficient, *i.e.,* unreasonable under prevailing professional standards; and (2) that he was prejudiced by the attorney's performance. *Government of the Virgin Islands v. Forte*, 865 F.2d at 62 (*citing Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Under the performance deficiency prong, "[j]udicial scrutiny . . . is highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. Thus, the defendant must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound . . . strategy.'" *Id.* at 689 (quoting *Michigan v. Louisiana*, 350 U.S. 91, 101 (1955)). *See also Wiggins v. Smith*, 539 U.S. 510, 521 (2003)(no specific guidelines for appropriate attorney assistance, conduct must be "reasonable considering all the circumstances")(*quoting Strickland*, 466 U.S. at 688)).

Under the *Strickland* prejudice prong, the defendant must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To establish prejudice, Donaldson also must demonstrate that his counsel's errors rendered the proceeding fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 369-370 (1993)("an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair

4

or unreliable, is defective. . . .  To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.").  The Third Circuit has generally endorsed consideration of the prejudice prong before examining the performance of counsel prong "because this course of action is less burdensome to defense counsel." *United States v. McCoy*, 410 F.3d 124, 132 n.6 (3d Cir. 2005).

## B. There is No Need For An Evidentiary Hearing on Donaldson's Claims

When reviewing a § 2255 motion, the Court must first determine whether an evidentiary hearing is required.  The decision to order a hearing is committed to the sound discretion of the trial court and will be reviewed for abuse of that discretion.  *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989).  Section 2255 provides that a hearing shall be held "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  Thus, only when a petitioner raises a contested issue of material fact is an evidentiary hearing required.  *See United States v. Essig*, 10 F.3d 968, 976 (3d Cir. 1993).  *See also Government of the Virgin Islands v. Weatherwax*, 20 F.3d 572, 574 (3d Cir. 1994)("District Court must determine whether [defendant] has alleged facts, viewed in the light most favorable to him, that, if proven, would entitle him to relief" and then decide if hearing required to determine truth of those allegations (internal citations omitted)).

Stated differently, Donaldson is not entitled to a hearing if his allegations are "conclusively contradicted by the record," or if they are "patently frivolous." *Solis v. United States*, 252 F.3d 289, 295 (3d Cir.2001); *see Government of the Virgin Islands v. Forte*, 865 F.2d at 62.  Where the motions, files, and records "'show conclusively that the movant is not entitled to relief,'" then a district court may summarily dismiss a Section 2255 motion without a hearing. *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir.1994) (internal quotations omitted).

Here, the Court may consider and summarily reject Donaldson's request for a new sentencing because, under the facts as alleged, Donaldson cannot satisfy his burden to show

constitutionally deficient performance by defense counsel. There is no issue of material fact raised by the defendant that requires this Court to conduct a hearing. To the extent the record was silent as to certain issues, those issues have been addressed in the Figliola Affidavit, attached hereto as Exhibit 1. Even accepting his non-frivolous claims as true, Donaldson has "conclusively fail[ed] to show ineffective assistance of counsel," as discussed in detail below. *United States v. Dawson*, 857 F.2d 923, 927-28 (3d Cir. 1988).

### C. Defendant's Claims Regarding Evidence in Mitigation of Sentence Are Meritless

Defendant alleges that his counsel should have argued the 18 U.S.C. Section 3553(a) factors applicable to his sentence in mitigation, including (a) the substantial disparity from the probationary sentence that the court imposed upon co-defendant Gary Arters; (b) the defendant's early acceptance of responsibility; and (c) the testimony of (uncalled) character witnesses for the defendant at his sentencing. Defendant cannot meet his *Strickland* burden with respect to any of these challenges. Each will be addressed in turn.

#### 1. Disparity Between Gary Arters' Sentence and Defendant's Sentence

First, Donaldson complains that defense counsel did not specifically argue the disparity between the thirty (30) month sentence he received and the sentence of probation for his co-defendant, Gary Arters.[4] At base, the defendant's argument goes to defense counsel's decision not to raise the issue of the co-defendant's sentence at the sentencing hearing. As such this Court's scrutiny of Donaldson's counsel's strategic considerations must be "'highly deferential,'" with the "'reasonableness of counsel's conduct judged on the facts specific to the case at issue, viewed as of the time of counsel's conduct . . . .'" *Roe v. Flores-Ortega,* 528 U.S. 470, 477 (2000)(*quoting Strickland*, 466 U.S. at 688-690).

As the attached Figliola Affidavit makes clear, counsel did not argue for a lesser sentence for Donaldson based on the probationary sentence for co-defendant Gary Arters because of the

---

[4]    Arters was sentenced to three years probation and restitution of approximately $46,000 for his guilty plea to Count One of an Information charging him with fraud in connection with access devices, in violation of 18 U.S.C. § 1029(a)(5). *See* Ex. 3, PSR at ¶4.

differences in their situations. *See* Ex. 1 at ¶ 11. The record demonstrates that the sentencing disparity between the two men could have been a function of several factors, including Arters' level of involvement in the crime to which he pled guilty, his personal benefit from that crime, his prior criminal history, and the pre and post-charge restitution Arters paid to the victims. *Id.* *See also* Ex. 3, PSR at ¶¶ 6-7, 9-11, & 14.

Prior to sentencing, Figliola had discussions with Donaldson and Arters' counsel about co-defendant Arters' sentence and the factors present in Arters' background that were not present in Donaldson's background. Ex. 1 at ¶ 11. Based on those discussions, Figliola "did not believe comparison of Mr. Arters' conduct with Mr. Donaldson's at the February 22, 2006 sentencing hearing would be beneficial to Mr. Donaldson." *Id.* Accordingly, the sole direct reference Figliola made to Arters at the sentencing hearing was to note that "[Donaldson]'s going to have a significant restitution order where he's going to have to join in with his other two cohorts to pay back a significant amount of money." Ex. 2 at 6.

Trial and hearing strategies are a matter of professional judgment. The ample evidence in the record supporting the sentencing differential between the co-defendants demonstrates Figliola's reasoned exercise of that judgment not to emphasize Arters' conduct at Donaldson's sentencing. *See* Ex. 3, PSR at ¶¶ 6-7, 9-11, & 14. *See Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). In light of all the circumstances, defense counsel's choice not to focus on Arters' sentence must be presumed to "fall[] within the wide range of reasonable professional assistance." *Id.* at 688-89. Thus, the defendant cannot satisfy *Strickland's* performance deficiency prong. There are no issues of material fact that require a hearing on this point, and thus Donaldson is not entitled to one.

Even if this Court were to reach *Strickland's* prejudice prong, in light of all of the facts and circumstances of the case, Donaldson cannot prove that "there is a reasonable probability that, but for counsel's [decision not to mention Arters' probationary sentence at the February 22,

7

2006 hearing], the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, nor that Figliola's decision not to focus on Arters rendered "the result of the proceeding . . . fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. at 369-370. Thus, Donaldson's claim fails to satisfy the prejudice prong as well.

### 2. Variance Based on Donaldson's Early Acceptance of Responsibility

Defendant's second complaint is that counsel did not argue specifically that his early acceptance of responsibility, "such as his [February 2004] statement to the authorities admitting his involvement [in the charged crime]" merited a variance in the otherwise applicable U.S. sentencing guideline range. D.I. 32 at 5 (reverse). This complaint is frivolous, and the defendant cannot meet either *Strickland* prong.

Consistent with the parties' agreement under the Memorandum of Plea Agreement, the government did not object to the PSR, which included a three-level adjustment for acceptance of responsibility. *See* Ex. 3, PSR at ¶¶ 18 & 29. The Court thus granted Donaldson "the benefit of a three-level downward adjustment for his acceptance of responsibility." Sentencing Transcript, Ex. 2 at 3. Donaldson offense guideline level was lowered from a level 18 to a level 15 accordingly. *See* Ex. 3, PSR at ¶ 30. Thus, the record facts do not support a showing that "there is a reasonable probability that, but for counsel's [failure specifically to argue his early acceptance of responsibility at the sentencing hearing], the result of the proceeding [Donaldson's sentence] would have been different." *Strickland*, 466 U.S. at 694. Here, Donaldson received the bargained-for three-level reduction for acceptance of responsibility; the sentencing was not rendered "fundamentally unfair or unreliable" by any alleged failure to argue further for a Section 3553(a) variance from the guideline range based, in part, on early acceptance of responsibility. Donaldson fails to satisfy *Strickland's* prejudice prong.

Donaldson likewise cannot demonstrate any deficiency in counsel's performance with respect to this early acceptance of responsibility claim. The defendant's February 2004 statement to representatives of the U.S. Secret Service is detailed in the PSR. *See* Ex. 3, PSR at ¶11. The

PSR acknowledges that Donaldson, with an attorney present, gave a post-*Miranda* statement about his conduct with co-defendant Gary Arters and a third-party, R.B. wherein Donaldson admitted using Arters' and R.B.'s merchant credit card accounts on several occasions. In actuality, the investigation uncovered that Donaldson had used Arters' account for 19 fraudulent transactions and R.B.'s account for 22 transactions. *Id.* Thus, as set forth in the PSR, Donaldson minimized his criminal conduct in that February 2004 statement to the U.S. Secret Service. *Id.*[5]

Moreover, Donaldson's conduct while on release pending sentencing did not necessarily support a claim of early acceptance of responsibility. For example, during his presentence interview, Donaldson implicated himself in ongoing non-payment of income tax. Ex. 3, PSR at ¶ 99. Further, the PSR set forth the fact that, on January 24, 2006, a $100 check drawn on a PNC account for which there were insufficient funds was provided by Melissa Heck for the purpose of opening up a commercial checking account with WSFS (on which Donaldson had signature authority) for Donaldson and Heck's limousine business, thus implicating Donaldson in ongoing fraud within the month prior to his sentencing. *Id.* at ¶ 102.[6]

Based on all of the above information, the Court's decision to credit Donaldson for acceptance of responsibility was not a foregone conclusion. As the Figliola Affidavit sets forth, "in light of the issue surrounding the alleged fraud in January 2006, I was satisfied with the Court's decision to grant Mr. Donaldson a three level downward adjustment from his otherwise applicable guideline range for acceptance of responsibility. Likewise, I was satisfied at the government's recommendation for the low end of the guideline range, consistent with the terms of the Memorandum of Plea Agreement." Ex. 1 at ¶ 9. Exercising this Court's "highly deferential" scrutiny of defense counsel's performance, this Court should "indulge [the] strong

---

[5] Donaldson also claimed to have asked the card holder, Charles Geiger, if he could utilize his credit cards. In fact, Geiger was dead at the time almost all of the fraud occurred. *See* Ex. 3, PSR at ¶ 12.

[6] Donaldson's counsel specifically denied this allegation during the sentencing colloquy. Ex. 2 at 5.

presumption" that Figliola exercised "reasonable professional assistance" in deciding against requesting a variance for early acceptance of responsibility, in light of the facts and circumstances of the case known to him at the time. *Strickland*, 466 U.S. at 688-89.

Because the defendant cannot satisfy either *Strickland's* performance or prejudice prong and because there are no issues of material fact with respect to his asserted claim of ineffectiveness for failing to argue for a Section 3553(a) variance based on early acceptance of responsibility, this claim may be summarily dismissed.

### 3. Variance Based On Testimony of Uncalled Character Witnesses

Donaldson attaches two affidavits to his § 2255 motion, one from Melissa Heck and one from Robert Fontanez. D.I. 32. Donaldson argues that 18 U.S.C. § 3553(a) supported a variance from the otherwise applicable U.S. sentencing guideline range on the grounds, *inter alia*, of the testimony of these uncalled character witnesses. D.I. 32 at 5 (reverse side).

For her part, Heck indicates that she was present at the sentencing but that Figliola "did not speak with [her] about . . . being a witness in court for Mr. Donaldson . . . [nor was she] "called as a witness[,] although [she] was willing and prepared to testify to Mr. Donaldson's good character." D.I. 32, Heck Affidavit at ¶ 1. Moreover, Heck claims that she was (and would be in the future) prepared to testify that Donaldson was an "excellent father" to his children whose "absence from his family situation would cause a devastating negative effect upon [herself] and all three of his children." *Id.* at ¶ 2.[7]

Fontanez likewise indicates he was present at Donaldson's sentencing hearing, but was not asked to testify on the defendant's behalf nor interviewed as a character witness. D.I. 32, Fontanez Affidavit at ¶1. Fontanez claims that he would have informed (and is prepared in the future to inform) the court of his positive, father-like relationship with Donaldson and Donaldson's "excellent" character. *Id.* at ¶ 2.

---

[7] Ms. Heck's and Mr. Donaldson's relationship, both financial and personal, is detailed extensively in the PSR. *See, e.g.*, Ex. 3, PSR at ¶¶ 83, 84, 99, 102, & 104.

The attached Figliola Affidavit fills the prior silence in the record as to why neither Heck nor Fontanez were called as character witnesses. *See* Ex. 1 at ¶¶ 5-10. In light of the record evidence as supplemented with the Figliola Affidavit, Donaldson cannot demonstrate that defense counsel's decision not to call Heck or Fontanez as character witnesses at the sentencing hearing was constitutionally deficient under either of *Strickland*'s performance or prejudice prongs.

First, and importantly, at no time prior to sentencing did Donaldson indicate to Figliola that he (Donaldson) wanted anyone to testify on his behalf at sentencing. *Id.* at ¶ 5. Second, defense counsel had spoken on several occasions with Heck and was aware of her relationship with Donaldson and that they had young children at home. *Id.* at ¶ 6. Third, defense counsel's decision not to call Heck as a character witness was based on his concerns about Heck's participation in an alleged fraud at WSFS on January 24, 2006, that defense counsel became aware of through the government's attorney. *Id.* at ¶¶ 7-8. Figliola spoke to Heck about the alleged fraud and her participation in it, but did not receive an explanation that fully satisfied him. *Id.* at ¶8. As a result, counsel was "concerned that any decision to have Ms. Heck testify at Mr. Donaldson's sentencing hearing would subject her to potential cross-examination by [the AUSA] about this attempted fraud and have a detrimental affect on Donaldson's sentencing." *Id.*[8]

---

[8] While Heck did not testify at the sentencing hearing, counsel did request a (non-jail time) sentence below the otherwise applicable sentencing guideline range by reference to her, as follows:

> [Donaldson] does have an ongoing business that's going to be left in the care of Ms. Melissa Heck, his fiancee, who will also be assuming some pretty significant financial obligations on her own because Mr. Donaldson faces jail time. Mr. Donaldson would stand here and ask your Honor to, because of the financial crunch being placed on him and Ms. Heck, to actually go below the guidelines and not put him in incarceration. I don't anticipate that your Honor is going to consider that based on the State's [government's] position. Your Honor, we would ask that you do not impose anything greater than the minimum guideline sentence and we would ask that you give Mr. Donaldson at least 60 days to report so that he could finalize his – the business operations that Ms. Heck will be taking over as well as some other obligations. Ex. 2 at 6.

Fourth, Figliola had not met nor heard of Fontanez prior to the February 22, 2006 sentencing hearing. *Id.* at ¶ 10. Donaldson had never mentioned Fontanez to Figliola prior to the sentencing hearing and, at no time, did Donaldson ask defense counsel if Fontanez could testify on his behalf. *Id.* Finally, in light of the fact that Figliola had not met Fontanez prior to the hearing, there had been no opportunity to interview Fontanez and/or check his background, as Figliola would want to do prior to using someone as a witness at sentencing. *Id.*

As set forth above, the Figliola Affidavit thus demonstrates that defense counsel's decisions not to call Heck or Fontanez as character witnesses at the sentencing hearing were reasoned and strategic ones, based on rational considerations under all the circumstances and thus entitled to a "strong presumption" that these decisions fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. Donaldson did not ask Figliola to call either person as a witness. Figliola concluded that calling Heck might, in light of all the circumstances, have a detrimental affect on Donaldson's sentencing. *Id.* at ¶ 8. Moreover, Figliola had not previously interviewed Mr. Fontanez, "as [he] would want to do prior to placing someone on the stand as a character witness at a sentencing hearing." *Id.* at ¶ 10. Thus, under the deficiency/performance prong, Figliola's decisions not to call Ms. Heck or Mr. Fontanez are entitled to "high[] deferenc[e]," and because they were "made after thorough investigation of law and facts relevant to plausible options" should be "virtually unchallengeable." *Strickland*, 466 U.S. at 688, 690.

Likewise, Donaldson cannot prove prejudice from the decisions not to call Heck or Fontanez as witnesses, because the record facts cannot demonstrate a "reasonably probability that, but for [the failure to call these witnesses] the result of the proceeding [Donaldson's sentence] would have been different," *Strickland*, 466 U.S. at 694, and/or that failure to include their testimony at the hearing rendered the sentencing hearing "fundamentally unfair or unreliable." *Lockhart*, 506 U.S. 369-70. This claim can also be summarily dismissed.

12

### D. Counsel's Failure To Object To The Court's Sentencing Methodology Did Not Render His Assistance Ineffective

Finally, the defendant contends that his attorney should have objected to the Court's "failure to comply with the requisite sentencing methodology as set forth in *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Cooper*, 437 F.3d 324 (3d Cir. 2005)[sic], which was brought to the court's attention by the Government although without objection from defense counsel. Therefore, this case requires a new sentencing where all of the §3553(a) factors may be appropriately considered, not just the applicable sentencing guidelines range." D.I. 32 at 5 (reverse). Here, too, the defendant cannot demonstrate constitutionally deficient performance or prejudice resulting from defense counsel's actions, and his argument fails.

As an initial matter, the government objects to the defendant's characterization of the Court's actions in sentencing the defendant as a "failure to comply" with *Booker* or *Cooper*. In fact, after offering Donaldson the opportunity to speak and prior to pronouncing sentence, the Court stated as follows:

> All right. As I read this presentence report, I note that it is somewhat different than most that I read. Mr. Donaldson, you actually had a supportive family. You actually had an opportunity to educate yourself. You managed to squander those opportunities. You seem to have little respect for authority or an appreciation for an honest lifestyle. Your financial troubles are of your own doing. You have not hurt anyone but your family and your friends. So there is little to commend you today, I have to say.

Ex. 2 at 6-7.

> After pronouncing sentence, the following colloquy occurred:

> Court: Is there anything else that I need to address from you [the AUSA]?

> AUSA: Yes, ma'am. In light of the Third Circuit's ruling in, I believe it was U.S. versus Cooper last week, with respect to your Honor's sentence, your Honor is required to – there are no magic words to what the Third Circuit said, but you're required to indicate that you have considered all of the factors pursuant to 3553(a) and that the sentence imposed complies with and is no greater than is necessary under those factors. It is unclear from the opinion whether your Honor needs to go through every factor individually. However, having read the opinion in light of a brief I had to write last week, I think at least briefly addressing each of the factors is suggested, if you will, your Honor, by the opinion.

> Court: I decline to do that today. I have given my reasons. I believe they are consistent with the factors I have to consider under 3553(a). I believe the sentence given is

13

consistent with the interests of justice under 3553(a), is not greater than necessary, and those are my reasons at this point.

Ex. 2 at 10.

Under *United States v. Cooper*, 437 F.3d at 328, sentences are to be reviewed for reasonableness, which assessment is essentially divided into two components. First, the Third Circuit reviews whether the sentencing court "exercised its discretion by considering the relevant factors" under 18 U.S.C. § 3553(a). *Cooper* 437 F.3d at 329. Specifically, the appellate court reviews the record to determine whether "the trial court gave meaningful consideration to the §3553(a) factors." *Id.* Provided the Third Circuit is satisfied that a sentencing court considered the relevant factors, it then examines the second component of the reasonable analysis – whether those factors were "reasonably applied to the circumstances of the case." *Id.* at 330.

Taken as a whole, the Court's actions at the sentencing hearing, including the colloquy set forth above, do not constitute a "failure to comply" with *Booker* and *Cooper* because the Court demonstrated a meaningful consideration of factors including the defendant's history and characteristics (*see* § 3553(a)(1)), and the need for the sentence imposed to promote respect for the law, but not be greater than necessary (*see* § 3553(a)(2)). Thus, defense counsel's failure to object to the Court's actions cannot be seen as unreasonable under prevailing professional standards at the time. *See Strickland*, 466 U.S. at 687.

As the Figliola Affidavit makes clear, defense counsel was not aware of the *Cooper* decision at the time of the sentencing hearing. Ex. 1 at ¶ 12.[9] Having now read *Cooper* and being aware that government counsel brought the *Cooper* decision to the Court's attention, defense counsel cannot say that his conduct at the sentencing hearing would have been different had he been familiar with *Cooper*. *Id.*

Even accepting, for purposes of argument only, the assertion that the Court's sentencing colloquy "failed to comply" with *Cooper*, defense counsel's lack of objection to the Court's

---

[9] The *Cooper* decision was handed down by the Third Circuit on February 14, 2006, eight days prior to Donaldson's sentencing. *See Cooper*, 437 F.3d at 324.

14

methodology did not result in prejudice to the defendant under *Strickland*. In this instance, as readily acknowledged by the defendant, the government noted the existence of the *Cooper* case to the Court. Ex. 2 at 10. Thus, any alleged "failure to comply" with *Cooper* (and - by extension - *Booker* on which the *Cooper* decision is based) was raised at the sentencing hearing for the Court's consideration.[10] That it was raised by government counsel is no matter; it was raised. Therefore, the defendant cannot prove that "there is a reasonable probability that, but for [counsel's failure to challenge the Court's sentencing methodology under *Cooper*], the result of the proceeding [Donaldson's sentence] would have been different." *Strickland*, 466 U.S. at 694.

## V. Conclusion

For the above stated reasons, the United States respectfully requests that this Court summarily deny defendant's Section 2255 motion for a new sentencing hearing.

Respectfully submitted,

Colm F. Connolly
United States Attorney

BY:
Shannon Thee Hanson
Assistant U.S. Attorney

Dated: June 29, 2007

---

[10] There is no record evidence to suggest that the Court believed the guidelines were anything other than advisory, as required under *Booker*.

15

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Government's Supplemental Response to

Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 has

been served via Federal Express and ECF upon:

Burton A. Rose
1731 Spring Garden Street
Philadelphia, PA 19130-3893

AND

Anthony A. Figliola, Jr.
Figliola & Facciolo
1813 Marsh Road, Suite A
Wilmington, DE 19810

Shannon Thee Hanson

DATED: June 29, 2007

# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| Respondent, | : |
| | : **Criminal Action No. 05-83-SLR** |
| v. | : **Civil Action No. 06-759-SLR** |
| | : |
| DAVID DONALDSON, | : |
| | : |
| Petitioner. | : |

## AFFIDAVIT

I, Anthony A. Figliola, Jr., do hereby state as follows:

1. I represented David Donaldson as his criminal defense attorney in the matter *United States v. David Donaldson*, Crim. Action No. 05-83-SLR. Mr. Donaldson was charged by the grand jury for the District of Delaware on September 6, 2005 in a four Count Indictment with access device fraud and conspiracy to commit access device fraud. Docket Item (hereinafter "D.I.") 1 & 2. I was privately retained to represent Mr. Donaldson, and therefore was present for all court proceedings in the above matter.

2. Mr. Donaldson pled guilty on November 22, 2005, pursuant to a Memorandum of Plea Agreement. D.I. 13. Mr. Donaldson was sentenced by the Court on February 22, 2006 to thirty (30) months imprisonment, three years supervised release, and restitution on each of counts 1-4, all counts to be served consecutively. D.I. 16. I have reviewed the transcript of the sentencing hearing in this matter. D.I. 26.

3. I further understand that Mr. Donaldson has filed a Motion Under 28 U.S.C. Section

1

2255 To Vacate, Set Aside, or Correct His Sentence, alleging that my performance as his lawyer at sentencing was constitutionally deficient. *See* D.I. 31 & 32. Specifically, Mr. Donaldson alleges that (a) I "failed to present available evidence in mitigation of sentence to support an argument that [Mr. Donaldson] should receive a lesser sentence in consideration of the factors set forth in 18 U.S.C. Section 3553(a)." D.I. 32 at 5 (reverse side). In particular, Mr. Donaldson maintains that I did not present (a) evidence of "the substantial disparity [in Mr. Donaldson's sentence] from the probationary sentence that the court imposed upon Petitioner's co-defendant Gary Arters;" (b) evidence of the appropriateness of a variance from the otherwise applicable U.S. Sentencing Guideline range "based upon [Mr. Donaldson's] early acceptance of responsibility, such as his statement to the authorities admitting his involvement [in the charged crime]; and/or (c) testimony at the sentencing hearing from Melissa Heck and Robert Fontanez. *Id.* Further, while recognizing that the Court was made aware of the issue by government counsel, Mr. Donaldson maintains that I "should have objected to the court's failure to comply with the requisite sentencing methodology as set forth in *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Cooper*, 437 F.3d 324 (3d Cir. 2005)." D.I. 32 at 5 (reverse side). Accordingly, Mr. Donaldson requests a new sentencing. *Id.* I understand that the Court has required that the government shall file this Affidavit and any supporting documentation by June 29, 2007 in response to the defendant's Motion. D.I. 37.

4.    I provided my David Donaldson file, in its entirety, to Burton Rose, current counsel for Mr. Donaldson at some point in 2006. Accordingly, the information below is based upon my best present recollection, as refreshed by documents and conversations with Assistant U.S. Attorney Shannon Hanson, the prosecutor assigned to Mr. Donaldson's case. I cannot, however,

provide specific dates and times for conversations or meetings with the parties that I reference below because I no longer maintain my file.

5.    At no time prior to his sentencing hearing before the Court on February 22, 2006 did Mr. Donaldson indicate to me that he wanted anyone to testify on his behalf at sentencing. I did speak with Mr. Donaldson's parents and based on those discussions, I concluded that they were unable to offer anything in his defense.

**Re Melissa Heck**

6.    Prior to the sentencing hearing, I spoke with Ms. Heck on numerous occasions. I was aware that she was Mr. Donaldson's fiancee and that they had young children at home.

7.    On or around February 3, 2006, I spoke with Ms. Hanson by telephone. She called to inform me that Mr. Donaldson was suspected of additional fraud involving the opening of a business checking account at WSFS by Ms. Heck, with Mr. Donaldson as one of the co-signers on the account. This act occurred on or about January 24, 2006.  Ms. Hanson sent me two letters (with attached materials), both dated February 3, 2006 documenting the alleged fraud.  Ms. Heck was implicated in the alleged fraud on WSFS in January 2006 because she opened up the account using a check drawn on an account for which there were insufficient funds.  Ms. Hanson also reported this alleged fraud to Martin Durkin, Senior U.S. Probation Officer, and it was presented to the Court in Paragraph 102 of the Presentence Investigation Report ("PSR").

8.    I spoke with Ms. Heck about this alleged fraud at WSFS and the documents provided to me by Ms. Hanson.  Ms. Heck could not fully explain to my satisfaction, which involved both herself and Mr. Donaldson.  I informed Ms. Heck I was aware that the prosecutor knew of her (Heck's) involvement in the attempted fraud.  I was concerned that any decision to

3

have Ms. Heck testify at Mr. Donaldson's sentencing hearing would subject her to potential

cross-examination by Ms. Hanson about this attempted fraud and have a detrimental affect on

Donaldson's sentencing.

9.    Moreover, in light of the issue surrounding the alleged fraud in January 2006, I was

satisfied with the Court's decision to grant Mr. Donaldson a three level downward adjustment

from his otherwise applicable guideline range for acceptance of responsibility.  Likewise, I was

satisfied at the government's recommendation for the low end of the guideline range, consistent

with the terms of the Memorandum of Plea Agreement executed by the parties.

**Re Robert Fontanez**

10.    I first met Robert Fontanez in the courtroom at Mr. Donaldson's sentencing on

February 22, 2006.  Mr. Donaldson never previously had mentioned Mr. Fontanez to me, nor had

I heard anything about Mr. Fontanez from others.  At no time did Mr. Donaldson ask me if Mr.

Fontanez could testify on his behalf at sentencing.  In light of the fact that I first met Mr.

Fontanez on February 22, 2006, I did not have the opportunity prior to the sentencing hearing to

interview him or to check into his background, as I would want to do prior to placing someone on

the stand as a character witness at a sentencing hearing.

**Re Gary Arters**

11.    Prior to the sentencing hearing, I did have a discussion with Mr. Donaldson about

co-defendant Gary Arters and the probationary sentence he received from the Court.  We

discussed the fact that Mr. Arters' minimal criminal record (when compared to Mr. Donaldson's

criminal history category III), his lesser involvement in the charged crimes (Arters was only

charged in one of the two conspiracies Donaldson was charged with), his cooperation, and Mr.

4

Arters' restitution payments prior to sentencing were all factors in support of Mr. Arters' probationary sentence. I also discussed these same issues with John Malik, counsel for Mr. Arters prior to Mr. Donaldson's sentencing hearing. Based on discussions with Mr. Malik and Mr. Donaldson, I did not believe comparison of Mr. Arters' conduct with Mr. Donaldson's at the February 22, 2006 sentencing hearing would be beneficial to Mr. Donaldson.

**Re *United States v. Cooper***

12.     At the time of Mr. Donaldson's February 22, 2006 sentencing hearing, I was not aware of the Third Circuit Court of Appeals decision in *United States v. Cooper*, 437 F.3d 324 (3d Cir. 2006), which was issued on February 14, 2006. Having now reviewed *Cooper*, I cannot say that I would have acted differently in the sentencing than I did had I been familiar with *Cooper* prior to Mr. Donaldson's sentencing. The prosecutor brought the *Cooper* decision to the Court's attention. Donaldson was facing pending charges in Delaware plus allegations in the WSFS matter, his actions were not indicative of one who was working toward rehabilitation. I was satisfied with the government's recommendation, consistent with the Memorandum of Plea Agreement, that Mr. Donaldson be sentenced at the low end of the guidelines.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ⟨29⟩ day of June, 2007.

Anthony A. Figliola, Jr.

# Exhibit 2

26

1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

4    UNITED STATES OF AMERICA,        :    CRIMINAL ACTION
                                       :
5                 Plaintiff           :
                                       :
6              vs.                     :
                                       :
7    DAVID DONALDSON,                  :
                                       :
8              Defendant              :    NO. 05-83 (SLR)

9                              - - -

10                                  Wilmington, Delaware
                                    Wednesday, February 22, 2006
11                                  4:18 o'clock, p.m.

12                             - - -

13   BEFORE:   HONORABLE SUE L. ROBINSON, Chief Judge

14                             - - -

15   APPEARANCES:

16            SHANNON HANSON, ESQ.,
              Assistant United States Attorney
17
                   Counsel for Plaintiff
18

19            FIGLIOLA & FACCIOLO
              ANTHONY A. FIGLIOLA, JR., ESQ.
20
                   Counsel for Defendant
21

22

23

24                                  Valerie J. Gunning
                                    Official Court Reporter
25
              EXHIBIT A

1

2                            P R O C E E D I N G S

3

4                    (Proceedings commenced in the courtroom beginning

5    at 4:18 p.m.)

6

7               MS. HANSON:   Afternoon, your Honor.

8               THE COURT:   Good afternoon.

9               MS. HANSON:   Now is the time the Court has set

10   for sentencing in United States of America versus David

11   Donaldson.   It's Criminal Action No. 05-83-1.

12               I note that Mr. Donaldson is present in the

13   courtroom with Mr. Figliola, his counsel.

14               THE COURT:   All right.   As I usually do, I will

15   go through the sentencing guideline calculations.

16               The defendant pled guilty to counts charging him

17   with knowingly and intentionally committing access device

18   fraud, a violation of Title 18 of the United States Code,

19   Section 1029(a)(5).   The maximum penalties that could be

20   imposed by statute for this offense is 15 years imprisonment,

21   a $250,000 fine, three years supervised release, and a $100

22   special assessment.

23               Mr. Donaldson also pled guilty to charges of

24   conspiracy to commit access fraud, access device fraud, a

25   violation of Title 18 of the United States Code, Section

1   1029(a)(5) and (b)(2).

2          The maximum penalties that could be imposed by
3   statute for this offense are seven-and-one-half years
4   imprisonment, a $250,000 fine, three years of supervised
5   release, and a $100 special assessment.

6          Under the sentencing guidelines, the base offense
7   level for these offenses is a six.  There's an upward
8   adjustment of ten levels for the amount of the loss, which is
9   more than $120,000, but not more than $200,000.

10          There's an additional two-point upward or
11   two-level upward adjustment because the offense involved an
12   authentication device feature, which in this case was a
13   merchant terminal.  That gives us an adjusted offense level
14   of 18.

15          The defendant does get the benefit of a three-
16   level downward adjustment for his acceptance of
17   responsibility.  This gives us a total offense level of 15.

18          The defendant has an extensive, albeit not major
19   offenses, but extensive criminal history, and he has
20   accumulated four criminal history points, giving him a
21   criminal history category of Roman Numeral III.

22          With a total offense level of 15 and criminal
23   history category of Roman Numeral III, the guidelines would
24   call for a period of incarceration of from 24 to 30 months
25   followed by supervised release of from two to three years, a

4

1    fine of from 4,000 to $40,000, and restitution in the amount

2    of $193,039.50, a special assessment of $400, $100 on each

3    count.

4         Before we go any further, Mr. Donaldson, have you

5    had the opportunity to review the presentence investigation

6    report with your counsel, Mr. Figliola?

7         THE DEFENDANT:  Yes, I have, your Honor.

8         THE COURT:  All right.  Thank you.

9         I note that there are no formal objections, if I

10   recall correctly, made to the presentence report.

11        And before I have the defendant and his counsel

12   come forward, does the Government have a sentencing

13   recommendation in this case?

14        MS. HANSON:  Thank you, your Honor.  That is

15   correct, that the Government had no objections to the

16   presentence investigation report.

17        Pursuant to the memorandum of plea agreement

18   executed by the parties in this case, the Government

19   recommends the low end of the guidelines.

20        THE COURT:  All right.  Fine.

21        Mr. Figliola and Mr. Donaldson, if you could come

22   forward, then, and you may address the Court at this time.

23        MR. FIGLIOLA:  Good afternoon, your Honor.

24        Your Honor, there are no formal objections

25   to the report.  It has been thoroughly gone over with

1   Mr. Donaldson.   There were some discussions with Mr. Durkin,

2   and we agree with the calculations regarding the offense

3   level and his criminal history level.

4              There are, however, your Honor, a couple of

5   things in the revised report of February the 15th that I

6   would like to just discuss just briefly, your Honor.

7              One deals with the allegation that Mr. Donaldson

8   was driving with a suspended or revoked license.  I would

9   just like to point out that Mr. Donaldson did, in fact, deny

10  that, that he was with someone else, and there has been no

11  formal charges against Mr. Donaldson filed by the State of

12  Delaware in that particular case.

13             And then also there was the allegation later on

14  in the report that Mr. Donaldson may have made an attempt to

15  open a bank account.  That's contained on Page 19, where

16  there was insufficient funds to cover the check.

17             Again, there has been no formal charges there and

18  we deny that allegation.

19             Short of that, your Honor, what we're dealing

20  with is, as your Honor indicated, Mr. Donaldson does have

21  a rather lengthy, albeit not serious criminal record.  He is

22  not a violent felon or even violent misdemeanors and he's

23  here before your Honor on fairly significant felony charges,

24  but no physical injury or causation to anyone.

25             What we're looking at is what Mr. Donaldson faces

6

1    into the future.  He's going to have a significant

2    restitution order where he's going to have to join in with

3    his other two cohorts to pay back a significant amount of

4    money.

5          He does have an ongoing business that's going to

6    be left in the care of Ms. Melissa Heck, his fiance, who will

7    also be assuming some pretty significant financial

8    obligations on her own because Mr. Donaldson faces jail

9    time.

10          Mr. Donaldson would stand here and ask your Honor

11    to, because of the financial crunch being placed on him and

12    Ms. Heck, to actually go below the guidelines and not put him

13    in incarceration.  I don't anticipate that your Honor is

14    going to consider that based on the State's position.

15          Your Honor, we would ask that you do not impose

16    anything greater than the minimum guideline sentence and we

17    would ask that you give Mr. Donaldson at least 60 days to

18    report so that he could finalize his -- the business

19    operations that Ms. Heck will be taking over as well as some

20    other obligations.

21          Thank you.

22          THE COURT:  All right.  Mr. Donaldson, anything

23    you'd like to add?

24          THE DEFENDANT:  No.

25          THE COURT:  All right.  As I read this

1   presentence report, I note that it is somewhat different than

2   most that I read.

3           Mr. Donaldson, you actually had a supportive

4   family. You actually had an opportunity to educate

5   yourself. You managed to squander those opportunities. You

6   seem to have little respect for authority or an appreciation

7   for an honest lifestyle. Your financial troubles are of your

8   own doing.

9           You have not hurt anyone but your family and your

10  friends. So there is little to commend you today, I have to

11  say.

12          Given that, pursuant to the Sentencing Reform Act

13  of 1984, it is the judgment of the Court that the defendant,

14  David Donaldson, is hereby committed to the custody of the

15  Bureau of Prisons to be imprisoned for a term of 30 months

16  on each of Counts 1 through 4 to be served concurrently.

17          Upon release from imprisonment, the defendant

18  shall be placed on supervised release for a term of three

19  years.

20          This term consists of terms of three years on

21  each of Counts 1 through 4, all such terms to run

22  concurrently.

23          Within 72 hours of release from the custody of

24  the Bureau of Prisons, he shall report in person to the

25  Probation Office in the district to which he's released.

1          While on supervised release, the defendant shall

2    not commit another federal, state or local crime, shall

3    comply with the standard conditions that have been adopted by

4    this Court, and shall comply with the following additional

5    conditions.  He shall not illegally possess a controlled

6    substance.  He shall not possess a firearm or destructive

7    device.  He shall cooperate in the collection of DNA as

8    directed by the probation officer.  He shall provide the

9    probation officer with access to any requested financial

10   information and shall not incur new credit charges or open

11   additional lines of credit without the approval of the

12   probation officer.

13          He shall participate in a program of mental

14   health treatment at the direction of the probation officer,

15   and he is prohibited from being self-employed while on

16   supervised release.

17          During his term of supervised release, he shall

18   maintain full-time legitimate employment that can be verified

19   by the United States Probation Office.

20          It is further ordered that the defendant shall

21   make restitution to the following persons in the following

22   amounts:  To Nova Information Systems, $183,386.39.  To

23   Washington Mutual, $84,653.11.  A portion of the defendant's

24   restitution in the amount of $46,903.13 to Nova information

25   systems shall be joint and several with Gary Arters, a

1   co-defendant.

2          Any payment that is not payment in full shall

3   be divided proportionately among the victims named.

4          The defendant shall make restitution payments

5   from any wages he may earn in prison in accordance with the

6   Bureau of Prisons financial responsibility program.  Any

7   portion of the restitution that is not paid in full at the

8   time of the defendant's release from imprisonment shall

9   become a condition of supervision.

10          While on supervised release, the restitution

11   shall be paid in monthly installments of $500 over a period

12   of 36 months to commence 30 days after the defendant's

13   release from custody.  Payments are to be made payable to the

14   Clerk of the United States District Court and shall be

15   collected by the United States Probation Office.

16          Interest on the restitution is waived.

17          The Court finds that the defendant does not have

18   the ability to pay a fine, and therefore the Court will waive

19   the fine in this case.  However, it is ordered that the

20   defendant shall pay to the United States a special assessment

21   of $400, which is mandatory and shall shall be due

22   immediately.

23          Again, I decline to give the defendant -- to have

24   the defendant self-report.  He shall be taken into custody

25   immediately.

1          I will state for the record that he has ten
2     days from the date judgment is entered to appeal the
3     sentence.

4          Is there anything else that I need to address
5     from you, Ms. Hanson?

6          MS. HANSON:   Yes, ma'am.   In light of the Third
7     Circuit's ruling in, I believe it was U.S. versus Cooper last
8     week, with respect to your Honor's sentence, your Honor is
9     required to -- there are no magic words to what the Third
10    Circuit said, but you're required to indicate that you have
11    considered all of the factors pursuant to 3553(a) and that
12    the sentence imposed complies with and is no greater than is
13    necessary under those factors.

14          It is unclear from the opinion whether your
15    Honor needs to go through every factor individually.
16    However, having read the opinion in light of a brief I
17    had to write last week, I think at least briefly addressing
18    each of the factors is suggested, if you will, your Honor,
19    by the opinion.

20          THE COURT:   I decline to do that today.   I have
21    given my reasons.   I believe they are consistent with the
22    factors I have to consider under 3553(a).   I believe the
23    sentence given is consistent with the interests of justice
24    under 3553(a), is no greater than necessary, and those are my
25    reasons at this point.

11

1          Anything else, Ms. Hanson?

2          MS. HANSON:  One moment, your Honor?

3          (Pause.)

4          MS. HANSON:  No, your Honor.

5          THE COURT:  Anything, Mr. Figliola?

6          MR. FIGLIOLA:  Your Honor, I know he had been

7    ordered for self-reporting.  We just ask if we could do it

8    in this courtroom just for a few minutes to take care of

9    some transfer of personal property between himself and

10   Ms. Heck.

11         THE COURT:  You may have a few minutes here in

12   the courtroom to do that, yes.

13         MR. FIGLIOLA:  Thank you, your Honor.

14         THE COURT:  All right.  Thank you.

15         (Court recessed at 4:32 p.m.)

16                   -  -  -

17

18

19

20

21         I hereby certify that the foregoing is a true
           and accurate transcript from my stenographic
22         notes in the proceeding.

23         _____
           Official Court Reporter
24         U. S. District Court

25

# Exhibit 3

**Exhibit 3 is redacted in its entirety from the e-filed version of this document**.